### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

Case No.: _____

**TIKTOK GLOBAL LLC, A FLORIDA
LIMITED LIABILITY COMPANY,**

Plaintiff,

vs.

**BYTEDANCE LTD, BEIJING
TELECOMMUNICATIONS CO. LTD,
TIKTOK INC., YIMING ZHANG,**

Defendants.

# COMPLAINT

Plaintiff, TIKTOK GLOBAL LLC, by and through undersigned counsel, hereby files this Complaint against Defendants, BYTEDANCE LTD., BEIJING TELECOMMUNICATIONS CO. LTD, TIKTOK INC., and YIMING ZHANG, and alleges as follows:

### INTRODUCTION

1.      In the ever-evolving landscape of social media, few platforms have captured the world's attention quite like TikTok. With its addictive short-form videos and algorithm-driven content delivery, the Chinese-owned app quickly became a global phenomenon, amassing over 170 million users in the United States and more than one billion worldwide.

2.      However, its meteoric rise was not without controversy, particularly in America, where concerns about data privacy and national security began to mount.

3.      As 2020 unfolded, these concerns reached a fever pitch. The Trump administration,

citing national security risks, issued an executive order that would effectively ban TikTok in the United States unless its Chinese parent company, ByteDance, divested its U.S. operations to an American company.

4.      Enter Plaintiff TikTok Global LLC ("TG" or "Plaintiff"), a group of American investors who saw an opportunity not just for profit, but to address the national security concerns head-on by acquiring TikTok's U.S. operations and severing them from Chinese control.

5.      This set the stage for what should have been a straightforward process of acquisition and divestment, but instead, it became a twisted tale of corporate intrigue, conspiracy, and antitrust violations that continues to this day.

6.      Plaintiff would soon discover that the game was rigged from the start because Beijing Telecoms and ByteDance had other plans, plans that circumvented proper procedures, stifled competition, and maintained their control over TikTok's U.S. operations — all under the guise of E.O. compliance.

7.      This action arises from Defendants Beijing Telecommunications Co. Ltd. ("Beijing Telecom"), ByteDance Ltd ("ByteDance"), its subsidiary TikTok Inc. ("TikTok"), and ByteDance CEO Zhang's course of conduct beginning in 2020 to:

i.      Reject compliance with U.S. data and privacy laws at both the State and Federal levels for years.

ii.      Delay and ignore remedial and safety investments in their U.S. subsidiary internet app company, putting users at increased risk compared to if the video app was owned by U.S. majority investors in a U.S. Corporation required to comply with State and Federal laws.

iii.      Make false claims to the U.S. public and government through media appearances and lobbying efforts, spending millions of dollars to influence U.S. politicians to take no action in enforcing recently passed laws aimed at eliminating National

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

Security Threats.

iv.   Potentially harvest U.S. user data, as evidenced by recent revelations of similar practices in the EU, resulting in a 530 million Euro fine for harvesting EU children's data and secretly exporting it to China.

v.   Damage Plaintiffs property and interfere with legal rights created through timely, accurate, and complete Committee on Foreign Investment in the United States ("CFIUS") certification.

vi.   Orchestrate an overarching conspiracy between 2019 and the present to manipulate and maintain leadership positions in the U.S. online video and social networking markets through:

   a.   Illegal agreements

   b.   Bid rigging

   c.   Operation of a criminal enterprise known as the "Z-BOT RICO Enterprise"

   d.   Market manipulation tactics

   e.   Anticompetitive practices (ByteDance - BEIJING TELECOMMUNICATIONS CO. LTD.- Oracle — TikTok - Zhang-Covington & Burlington - GD Culture Group) The Z-BOT RICO Enterprise

8.   The Z-BOT RICO Enterprise was formed in 2019 during anxiety-fraught meetings where Chinese executives conspired with American cloud server providers to undermine any U.S. legal ban requiring ByteDance to divest its TikTok subsidiary to American majority ownership.

9.   At the center of the conspiracy was the unlawful manipulation of CFIUS, enabled by secret agreements between technology companies and facilitated through meetings where illegal deals were negotiated.

10.   The intrigue deepened when Plaintiffs TikTok Global brand IP was misappropriated to mislead the public during a live CNBC broadcast, while Plaintiffs pending

3

CFIUS certification and timely executable acquisition agreement was suppressed.

11.     By orchestrating these charades, ByteDance continues to maintain their grip on TikTok by erecting insurmountable barriers to entry, stifling any legitimate acquisition offers that dare challenge their dominion.

12.     The recent Supreme Court decision in *TikTok Inc. v. Garland*, 604 U.S.___, 145 S.Ct. 57 (2025) upheld the constitutionality of the Protecting Americans from Foreign Adversary Controlled Applications Act ("the Act"), effectively banning TikTok in the United States unless its U.S. operations were severed from Chinese control..

13.     With TikTok effectively banned in the United States unless divested from Chinese control, Defendants face a stark choice: divest TikTok's U.S. operations to a qualified American buyer or cease operations in the United States entirely. Plaintiff stands ready, as it has since 2020, to acquire TikTok's U.S. operations and fulfill the requirements of the Act, ensuring that millions of Americans can continue to use the platform while addressing legitimate national security concerns.

## PARTIES

14.     Plaintiff, TIKTOK GLOBAL LLC ('TG'), is a Florida limited liability company, organized under the laws of Florida, and successor to Arkansas based, Tiktok Global Network Inc. ("TGN"), and Delaware incorporated Tiktok Global Inc. ("TGI"). TG's members are citizens of New York.

15.     Defendant, TIKTOK INC. ("TikTok"), manages Tiktok.com, a popular social media platform and is a California corporation with its principal place of business in Los Angeles.

16.     Defendant, BYTEDANCE LTD. ('ByteDance'), is a private company with operations and principal place of business in China.

4

17     Defendant, BEIJING TELECOMMUNICATIONS CO. LTD., ("Beijing Telecommunications") or ('BT') a private company with operations and principal place of business in China. Beijing Telecommunications. ByteDance, and Tiktok, are foreign entities under CFIUS 800.220(a) and under CFIUS regulations, 31 C.F.R.§ 800.220(a).

18.     Defendant, YIMING ZHANG, at all relevant times the CEO of ByteDance and a Chinese citizen.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under federal law, specifically the Sherman Antitrust Act, 15 U.S.C. § 1 et seq. the Clayton Act (15 U.S.C. §§ 15, 26), and RICO (18 U.S.C. §§ 1961-1968). This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

20.     The Committee on Foreign Investment in the United States ("CFIUS") published final rules on January 17, 2020, to implement (FIRRMA)

21     On August 6, 2020, President Trump issued an executive order addressing the "Threat Posed by TikTok" (the "August 6 EO"), prohibiting any transactions by U.S. persons with ByteDance Ltd., within 45 days.[1]

_____

[1] The E.O. justifies its action by referencing TikTok's alleged threats to U.S. national security through data collection, content censorship, and misinformation campaigns.

5

22.     On August 14, 2020, President Trump issued Order Regarding the Acquisition of Musical.ly by ByteDance Ltd. ("Aug. 14 EO"), ordering ByteDance to divest, within 90 days, from the assets and data that TikTok had gathered in the United States.

23.     ByteDance falls within the purview of CFIUS because of its 2017 acquisition of lip-sync app Musical.ly, which ByteDance later merged into TikTok to create a single integrated social media application.

24.     ByteDance did not submit an application for CFIUS review at the time of the acquisition, but CFIUS retroactively reviewed the acquisition and unanimously recommended divestiture to the President.

25.     TikTok and ByteDance filed a lawsuit on August 24 before the U.S. District Court for the Central District of California challenging the Aug. 6 EO as unconstitutional and ultra vires, and sought a court injunction against the order.

26.     The August 14 EO also established specific procedures under Section 2(d), requiring that: (i) parties to a transaction notify CFIUS in writing of any intended buyer, and (ii) allow 10 business days for CFIUS review before completing any sale.[2]

27.     These procedures were designed to ensure that any divestiture of TikTok's U.S. operations would address national security concerns and result in a complete transfer of ownership and control to a U.S. entity.

————————————————

[2] CFIUS three-step process for evaluating proposed or pending investments (1) a 30-day declaration filing; (2) a 45-day national security review (from 30 days), including an expanded time limit for analysis by the Director of National Intelligence (from 20 to 30 days); (3) a 45-day national security investigation, with an option for a 15-day extension for "extraordinary circumstances," and a 15-day presidential determination.

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD ♦ SUITE 901 ♦ MIAMI ♦ FLORIDA ♦ 33156 ♦ TEL: 305 670-8282 ♦ FAX: 305 670-8989

### Advantage #1 Successful Contact With TikTok CEO In August 2020

28.     The Plaintiff successfully contacted the TikTok CEO, Kevin Mayer, during the month of August 2020 to inform ByteDance of the interest in providing a divestiture solution for the ban its TikTok subsidiary was subject to.

### Advantage #2: TikTok's CEO Already Knew Plaintiff's CEO

29.     During these communications, Kevin Mayer confirmed he remembered the Plaintiff s CEO front a 2001 transaction between the concert and music company, SFX where Mayer was a senior executive and eUniverse, Inc. a public Internet company where the Plaintiff's CEO was executive Chairman at the time.

30.     Before TikTok's CEO Kevin Mayer is able to meet to have more detailed discussions with the Plaintiff's predecessor, Mayer unexpectedly resigns as CEO on August 27, 2024.

### Advantage #3: First To Incorporate TikTok Global

31.     On September 6, 2020, TikTok Global was born out of necessity, a strategic powerhouse forged as a CFIUS divestment solution, determined to seize ByteDance's TikTok U.S. operations. This move came on the heels of relentless pressure from the U.S. Government, which had long decried the looming threat of a Chinese-owned asset. A forced sale was the only path forward.

32.     Thereafter, Plaintiff secured, the website Tiktokglobalnetwork.com, equipped with private email channels for covert communications with ByteDance, TikTok, CFIUS, investors, and media titans.

33.     The departure of Kevin Mayer as TikTok CEO severed a vital connection. But the Plaintiff pivoted, engaging in an email and LinkedIn campaign with ByteDance executives,

7

declaring its intent to acquire TikTok U.S. and extolling the transformative benefits this acquisition promised for the defendants.

34.     The Plaintiff laid out a plan, poised to integrate additional online video assets and IP under its control into the CFIUS divestment deal, a move intended to redefine the digital landscape.

35.     Plaintiff's predecessor crafted a proprietary strategy engineered to elevate ByteDance while navigating the risks of an imposed ban.

36.     The Plaintiff provided ByteDance with a blueprint for survival.



(image above is from confidential work product part of an August 2020 Strategy Briefing Plaintiff Distributed to Over 20 ByteDance Senior Executives and Lawyers as part of Operation "White Knight Last Minute Rescue to Help USA by an American Citizen")

37.     The Plaintiff's investment of time and effort was fueled by an expectation: that upon gaining CFIUS certification, its name, brand, and "TikTok Global" divestment strategy would proceed.

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD ♦ SUITE 901 ♦ MIAMI ♦ FLORIDA ♦ 33156 ♦ TEL: 305 670-8282 ♦ FAX: 305 670-8989



**Beijing Byte Dance Telecommunications Co. Ltd.,**

**'BBT'**

WHY WHITE KNIGHT WANT HELP?

‡1 – The White Knight was a CEO of high profile internet company many years Ago and had tough challenges to get thru. When the White Knight became Aware of ByteDance CEO's challenging tir Knight saw a strategy To help and the White Knight wanted to get involved in an exciting fast moving Story and feel good if he could make positive difference to help a fellow Entrepreneur like Mr.

‡2 – The White Knight owns part of an exciting EU mobile video website with 20 million monthly users. The site needs some growth/expansion funding. Because ByteDance as part of its business strategy makes investments into mobile video Websites, The WhiteKnight realized that he could give ByteDance exclusive Right to terminate the acquisition agreements at any time and on no notice which Was critical for ByteDance to be able to do and control because otherwise ByteDance outside VC would not want ByteDance to be in situation where ByteDance coudnt get higher offer from Oracle after China Export license Granted, so ByteDance needs this flexibility as part of the agreements. WhiteKnight Buyer, TikTok Global Network (TGN) agreed to this knowing it likely that t would get terminated if Oracle really wanted to own TikTok in future. So a $25,000,000 investment will be made into the mobile video EU website To help it expand if a terminated agreement is decided by ByteDance. And ByteDance gets stock at cheap valuation in the EU mobile video site, & a $10,000,000 extra Prepaid credit to use in future. So ByteDance effectively does not have To pay lots of cash as with a normal termination fee (which in all cases The Termination fee payor would get no stock or no ad credits an dit would Be a LOSS/EXPENSE of significant amount which is not enjoyable. But in White Knight deal, ByteDance has that burden removed by good karma/luck that WhiteKnight controls mobile video superstar up and coming startup In EU!!!

(image above is from confidential work product part of an August 2020 Strategy Briefing Plaintiff Distributed to Over 20 ByteDance Senior Executives and Lawyers as part of Operation "White Knight Last Minute Rescue to Help USA by an American Citizen")

### Sep 9 Joint CFIUS Certification Submission

38.    On September 9, 2020, the Plaintiff submitted notice to CFIUS under Section 2(d)(i), staking its claim to TikTok's U.S. operations. (Ex. 1).[3]

39    The CFIUS submission, mandated under § 800.401, was simultaneously dispatched to BT and ByteDance CEO, Defendant Zhang, along with the head of Public Relations and Global Media, via email.

_____

[3]  § 800.236(a)(9) makes clear that any party that submitted a declaration or notice to the Committee regarding a transaction is a party to the transaction. Further under 800.236(b), a party to a transaction includes any affiliate of any party described under (a)(9).

9

September 9, 2020

ATTN: CFIUS
Cc: Mr. Yiming Zhang, CEO ByteDance Ltd

Under Sec. 2.(d)(i),  In regards to the U.S. Presidential E.O. Issued on: August 14, 2020
Under section 721 of the Defense Production Act of 1950, as amended (section 721), 50 U.S.C. 4565
Order Regarding the Acquisition of Musical.ly by ByteDance Ltd

Sec. 2.  Actions Ordered
(d)  ByteDance shall not complete a sale or transfer under section 2(b) to any third party:
(i)  until ByteDance notifies CFIUS in writing of the intended recipient or buyer; and
(ii)  unless 10 business days have passed from the notification in section 2(d)(i) and CFIUS has not issued an objection to ByteDance.  Among the factors CFIUS may consider in reviewing the proposed sale or transfer are whether the buyer or transferee: is a U.S. citizen or is owned by U.S. citizens; has or has had a direct or indirect contractual, financial, familial, employment, or other close and continuous relationship with ByteDance, or its officers, employees, or shareholders; and can demonstrate a willingness and ability to support compliance with this order.

Under Sec. 2.(d)(i), intended recipient or buyer:

TikTok Global Network Inc
244 Fifth Avenue,
Suite #g290
New York, NY 10001
bgreenspan@tiktokglobalnetwork.com

Brad Greenspan
244 Fifth Avenue,
Suite #g290
New York, NY 10001

Per Sec. 2(e)  ByteDance will provide specific details of the  TikTok Global Network Inc    transaction if still applicable under "description of efforts to divest the interests and rights described in section 2(b) and a timeline for projected competion of remaining actions" in next "Weekly basis"    required under Sec . 2€ to "certify to CFIUS"

(e)  From the date of this order until ByteDance provides a certification of divestment to CFIUS pursuant to section 2(b), ByteDance and TikTok Inc., a Delaware corporation, shall certify to CFIUS on a weekly basis that they are in compliance with this order and include a description of efforts to divest the interests and rights described in section 2(b) and a timeline for projected completion of remaining actions.
 include a description of efforts to divest the interests and rights described in section 2(b) and a timeline for projected completion of remaining actions.

Sec. 2.(d)(ii) factors CFIUS may consider in reviewing the proposed sale or transfer are (See Exhibit A)

Regards,

Brad Greenspan
President/CEO
TikTok Global Network Inc
244 Fifth Avenue, Suite #g290
New York, NY 10001

**Plaintiffs Management Leadership and Qualifications**

40.     The Plaintiff had an edge due to the high caliber of management it assembled to

navigate the CFIUS certification process and steer the post-acquisition operations of TikTok U.S.

assets.

10

41.     The chief executive of TikTok Global LLC is Brad Greenspan who previously ran TikTok's predecessor in 2020. With his experience in social media and online video technology, Greenspan is uniquely equipped to command a divested TikTok U.S. platform.

42.     At the age of 27, Greenspan launched a public company that became the eighth largest U.S. website property, achieving positive cash flow by the end of 2001. As Chairman and CEO of eUniverse, Inc., he raised its online audience from a mere 1 million users in 1999 to 49 million by 2001.

43.     In the aftermath of the dot-com bubble's devastating burst in 2001, Greenspan spearheaded a radical restructuring of eUniverse.

44.     This transformation involved shuttering its online music CD e-commerce division and pivoting to new online content and community business units. These moves catapulted revenue from a meager $1.8 million in fiscal year 2000 to $16 million in fiscal year 2001, achieving cash flow positivity and then growing to $33 million in fiscal year 2002 and $66 million by fiscal year 2003.

45.     A 2001 Gartner Report attributed to Greenspan the creation of proprietary methodology for Internet ad sales that has since morphed into the performance-based advertising model now used by over 90% of all annual online ad purchases.

46.     Greenspan also trailblazed a social network in the Metaverse, securing the first trademark for his LivePlace product on July 4, 2000, with a description that captured many of the attributes now synonymous with what the industry calls the metaverse. The lead developer of LivePlace later forged the popular PokemonGo mobile game.

47.     Greenspan is the sole American to craft three distinct websites that each reached the pinnacle of their respective categories. Myspace.com, a wholly-owned social network, came

11

onto the scene in August 2003, and became the preeminent social network by February 2004.

47.     By the close of 2005, eUniverse and Myspace were sold for $650 million in cash to News Corporation, marking an all-time high stock price and cashing out over 100 institutional investors.

48.     Greenspan next rolled out BroadWebAsia, acquiring controlling stakes in several Chinese video websites and constructing a network that lured over 60 million unique visitors per month across China.

49.      Major League Baseball (MLB) picked him to spearhead an international joint venture creating and operating MLB's first official website in China.

50.     His work culminated in securing an exclusive license from MLB's Advanced Media to launch MLB.cn in 2008—the first American-controlled Chinese company to obtain an online video streaming license from the People's Republic of China.

51.     Greenspan's experience in Singapore, where ByteDance runs a significant portion of TikTok U.S., provides him with valuable connections that would have benefit post-acquisition operations.[4]

52.     Additionally, Greenspan's pioneering efforts in livestreaming and online video— evidenced by his launch of the innovative LiveVideo.com video social network in 2007 and his role as co-founder of the video news site Liveleak.com—further bolstered his qualifications to expand and manage TikTok U.S.

---

[4]  In 2010, Greenspan was recruited by the Singapore Government and awarded an incubator fund in partnership with Singapore's National Research Foundation (NRF), subsequently operating a Singapore based incubator and making investments in Singapore digital media startups that contributed to the growth of Singapore's now thriving digital innovation ecosystem.

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD ♦ SUITE 901 ♦ MIAMI ♦ FLORIDA ♦ 33156 ♦ TEL: 305 670-8282 ♦ FAX: 305 670-8989

## THE Z—BOT RICO ENTERPRISE

53.     Defendants, in 2020, solicited and made covert plans with the founding members of the Z-BOT associated in fact enterprise: Beijing Telecom, ByteDance LTD, CEO Zhang, TikTok, Inc. (all Chinese based), and radically expanded the enterprise with U.S. cloud provider Oracle Corp, Covington & Burlington, GD Culture Group, and Sayonara LLC.  Plaintiff seeks injunctive relief to compel defendants to cease and desist front: i. Further racketeering acts described herein; ii. Preventing further harm to millions of U.S. citizen users victimized by the banned app; iii. Violating the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836); iv. Violating the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § § 1962(a), (b), ( c)); v. Violating 15 U.S. Code § 1; vi. Unjust enrichment vii. Tortious interference.

54.     Defendants have used an association-in-fact "enterprise," within the meaning of 18 U.S.C. 1961(4), to carry out their pattern of racketeering activity.

55.     Each Defendant qualifies as a "person" under the civil RICO statutes, knowingly and fraudulently conducting and participating in the Z-Bot Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

56.     Defendants engaged in unlawful activities such as interstate mail and wire fraud, which is illegal under RICO, even though pursuit of profit is not per se violative of these statutes.

57.     The Z-Bot Enterprise possesses; i. A common purpose and goal; ii. A membership; iii.   Organizational structure; iv. Ongoing relationships between Beijing Telecom and ByteDance Ltd; v. Sufficient longevity to permit and enable pursuit of its purpose and long-term objectives; vi. A continuous course of conduct affecting interstate and foreign commerce.

58.     Defendants violated RICO and injured Plaintiff and millions of U.S. citizens and their businesses or property through their conduct of the Z-BOT-Enterprise's unlawful activities to

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

maximize gain and profit.

59.     Defendants and the Z-Bot RICO Enterprise's course of conduct includes; i. concealment of systematic decisions placing financial goals above safety considerations; ii. Activities conducted in violation of applicable laws and regulations; iii. Perpetrating tax fraud; iv. Trade secret theft; v. Wire fraud; vi. Mail fraud; vii. Perjury; viii. Forgery; ix. Theft; and misappropriation of trade secrets and intellectual property (IP).

60.     Since 2020, Defendants have used the Z-Bot RICO Enterprise to conduct numerous interrelated criminal acts affecting trade or commerce.

61.     Defendants and the Z-Bot RICO Enterprise have and continue to engage in a fraudulent scheme to harvest U.S. consumer data and transfer it to China for economic and political reasons.

62.     Defendants and the Z-Bot RICO Enterprise also have and continue to engage in identifying and securing large online American audiences to generate commerce from through advertising, premium services, or p2p marketplace fees.

63.     For the purpose of devising and carrying out their scheme and artifice to defraud government regulators and Plaintiff and other victims by means of false or fraudulent pretenses, pretentions and promises, Defendants did place in an authorized depository for mail, or did deposit or cause to be deposited with private commercial interstate carriers and knowingly caused to be delivered by the United States postal service, letters, memoranda, and other matters, in violation of 18 U.S.C.§ 1341, or aided and abetted in such criminal acts, as previously described, under 18 U.S.C. § 2.

64.     Defendants' alleged RICO predicate acts in furtherance of their scheme to defraud governmental regulators constituted a pattern of racketeering activity within the meaning of 18

14

U.S.C. § 1961(5) due to the predicate acts being of a related and continuous.

65.     Each predicate act had the same or similar purpose: the predicate acts involved material misrepresentations, omissions and concealment in a scheme to deceive consumers or the Plaintiff and defraud the regulators into believing Defendants were conducting their operations legally.

66.     Included in these predicate acts are those situations where defendants communicated by mail, interstate wire or interstate carrier in order to obtain various required governmental approvals for Defendants' activities.

67.     RICO Defendants engaged in have engaged in a pattern of racketeering activity under § 1962(c).

68.     All of the aforementioned predicate acts are interrelated and continuous parts of the scheme of Defendants' Enterprise to defraud regulators and Plaintiff along with other victims. Continuity is demonstrated due to the predicate acts forming a pattern of racketeering stretching over many years.

69.     As a proximate result of the pattern of racketeering activity and RICO violations engaged in by Defendants, Plaintiff has suffered injury to its business and property.[5]

70.     Plaintiff seeks to prohibit the RICO Defendants from utilizing the pattern of unlawful conduct in which they have continually engaged during the relevant time period.

71.     The pattern of the RICO Defendants' illegal racketeering activity includes: i. Instances of mail fraud (18 U.S.C. § 1341); ii. Instances of wire fraud (18 U.S.C. § 1343); iii.

------

[5]  Plaintiff s CEO previously agreed to transfer to the Plaintiff, all rights and claims for damages he possesses under the RICO statue and Sherman Act.

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

Instances of destruction, alteration, or falsification (18 U.S.C. § 1519); iv. Instances of computer fraud (18 U.S.C. § 1832).

72.     As a result of the defendants' violation of the RICO statue including predicate act involving 18 U.S.C. § 1832 and 18 U.S. Code § 201, Plaintiff s property has been harmed and damaged.

73.     The loss of Plaintiff s 2020 brand by misappropriation during a CNBC financial news segment in September 2020 caused both TikTok Global Network and TikTok Global Inc. to begin having the value drained out of them and on March 1, 2022, Delaware based TikTok Global Inc. was forced to shutter as an active corporation.

74.     In addition, Defendants' violations of RICO statute's 18 U.S.C. § 1832 predicate act misappropriated Plaintiffs trade secrets and M&A strategy IP provided for the benefit of Beijing Telecom, ByteDance, and the Z-BOT Enterprise, causing Plaintiff's IP to be diminished, and lost.

75.     Plaintiffs property, specifically the interest in the divested assets of Defendant ByteDance and Beijing Telecommunications, was damaged by reason of the violation of section 1962.

76.     Plaintiffs business was harmed by reason of the violation of § 1962 as a result of not being able to get the benefit of the bargain owed for submitting the CFIUS certifications and notifications.

77.     Each defendant is liable for 100% of the damages Plaintiff, its business, and property has suffered, and were fully aware of the damages that would be caused.

**Plaintiff Submits Its Sep 14 CFIUS Compliant Transaction**

78.     On September 14, 2020, at 5:04 AM, with clear evidence of its genuine intent, Plaintiff notified CFIUS, ByteDance, and Zhang that TG had provided ByteDance with an

16

executable Asset Purchase Agreement for $33.3 billion designed to fully transfer ownership and control of TikTok's U.S. operations to an American company to allay the national security concerns that had led to the Executive Order. (**Ex. 2**).

79.      The Asset Purchase Agreement was a comprehensive, legally binding 50+ page document that addressed all aspects of the proposed transaction, including the purchase price, assets to be acquired, liabilities to be assumed, and transition services.

80.      The agreement was structured to ensure full compliance with the August 14 EO and CFIUS requirements. It also provided significant background on the Plaintiff to help the defendants realize why they were going to be putting TikTok in good hands with a very skilled experienced operator, the Myspace.com Founder, if they moved forward with the TG transaction.

81.      Zhang and Bytedance passed on the "White Knight" strategy guide from a top U.S. expert to Oracle Corp, which led Safra Cafa not to respond to the strategic proposal Plaintiff's predecessor emailed to Oracle on September 14, 2020.

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989



(image above is from confidential work product part of an August 2020 Strategy Briefing Plaintiff Distributed to Over 20 ByteDance Senior Executives and Lawyers as part of Operation "White Knight Last Minute Rescue To Help USA By An American Citizen")

82. Oracle joined the conspiracy no later than September 14, 2020 when it forwarded the confidential email and business proposal and licensing request received front Plaintiff predecessor TikTok Global incorporated.



(image above is from confidential work product part of an August 2020 Strategy Briefing Plaintiff Distributed to Over 20 ByteDance Senior Executives and Lawyers as part of Operation "White Knight Last Minute Rescue To Help USA By An American Citizen")

83.    Oracle, a member of Z-BOT RICO Enterprise, committed a violation of 18 U.S.C. § 1341 and/or § 1343 containing false information and facts by interstate wire or interstate carrier.

84.    This fraudulent inducement falsely claimed that the writing had the approval or authorization from Plaintiff.

85.    ByteDance and Zhang, along with their public relations head who was cc'd on the email, wrongly appropriated "TikTok Global", a separate predicate act violation of 1831(a)(5), (1).

86.    Based on credible information and belief, Beijing Telecom ordered ByteDance and other Z-BOT operatives to usurp the "TikTok Global" brand under false pretenses, flagrantly breaching § 1832 as collaborators in the Z-BOT RICO Enterprise.

87.    On or about September 20, 2020, the defendants—Z-BOT, TikTok, Zhang, ByteDance, Oracle, and Covington & Burling—sealed the conspiracy in violation of 18 U.S.C. §

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD ♦ SUITE 901 ♦ MIAMI ♦ FLORIDA ♦ 33156 ♦ TEL: 305 670-8282 ♦ FAX: 305 670-8989

1832(5), by systematically expropriated TG's trade secrets on divestiture, CFIUS protocols, and M&A strategies for Z-BOT's gain, fully aware their predatory scheme would harm the Plaintiff.

88.     Even Mnuchin, duty-bound by contract to safeguard the Plaintiff's equal rights, colluded in secret with Z-BOT, in violation of his legal and ethical obligations.

89.     The Defendants violated 18 U.S.C. § 1512 (c) by conspiring to conceal actual facts behind the legal cases they cited in their Motion To Dismiss the initial complaint in the prior case.

90.     Defendants sought to "impair" the "integrity" of the Plaintiff s credibility, and did so to exert influence over an official proceeding in U.S. District Court, case 25-cv-60645 in SD NY.

### The Sham Partnership and Conspiracy

91.     In a series of corporate maneuvers, ByteDance advanced to the next step, finalizing the intricate deal proposed by the Plaintiff that satisfied the demands of CFIUS.

92.     Despite the Plaintiff being the only interested buyer to strictly follow all CFIUS procedures—and having transmitted a fully executable acquisition agreement at 5:04 AM—at around 9:00 AM EST on September 14, 2020, Treasury Secretary Mnuchin appeared on CNBC and announced that Oracle had been selected as the ""trusted technology partner"" for TikTok's U.S. operations.

93.     Then, Mnuchin s unveiled his own version of "TikTok Global." In a calculated strategy that seemed designed to outmaneuver CFIUS, he declared matter-of-factly, that he had received a commitment "TO MAKE TIKTOK GLOBAL AS A U.S. HEADQUARTERED COMPANY WITH 20,000 NEW JOBS." (Ex. 3).

94.     The CFIUS approval deadline passed as of September 14, 2020.

95.     However, before the Plaintiff could introduce itself to the public and discuss its $33

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

billion acquisition agreement, its novel branding strategy was misappropriated, usurped and paraded on national television as if it belonged to another.

### PLAINTIFF'S EXECUTED 51 PAGE ACQUISITION AGREEMENT WAS USED AS A BACKUP BY THE Z-BOT RICO ENTERPRISE

96.     Oracle became a member of Z-BOT RICO Enterprise and violated 1341 and 1343 by providing false information and facts through interstate wire or carrier, which was a violation of 18 U.S.C. § 1341 and/or § 1343, as it fraudulently induced/falsely claimed the writing had been approved or authorized by Plaintiff.

97.     ByteDance and Zhang or their public relations head wrongly appropriated "TikTok Global," which is a separate predicate act violation of 1831(a)(5),(1).

98.     Plaintiffs trade secrets included its proprietary 51-page acquisition agreement, divestiture strategy, and strategy briefings they contributed and gave to ByteDance, TikTok, and Zhang.

99.     Beijing Telecom was directing its affiliates and subsidiaries like ByteDance to push down an alternative path that sidestepped the strict requirements of FIRRMA, offering a sophisticated partnership to surveil and recover mass American data, further bolstered by cloud storage with tech giants Oracle and Microsoft, and retailer Walmart.

100.     Mnuchin's deceptive portrayal on CNBC on September 14 caused confusion within CFIUS about the earlier "TikTok Global" submissions from the Plaintiff and introduced a completely different version of "TikTok Global" to the public.

101.     The Z-Bot RICO Enterprise's September 14, 2020 predicate act violated 8 U.S. Code § 1831(a) because the defendants and Steve Mnuchen intended and knew the "offense will benefit" a "foreign government foreign instrumentality, or foreign agent," which was China PRC.

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

102.     The Z-Bot RICO violated 8 U.S. Code § 1831(a)(5) because Z-BOT's Steven Mnuchen conspired with at least one other member to appropriate Plaintiffs brand and trade secrets.

103.     The Z-Bot RICO violated 8 U.S. Code § 1831(a)(2) because Zhang, ByteDance, and TikTok transmitted, delivered, sent, or conveyed Plaintiffs trade secrets, including the CFIUS certification, to Oracle and Covington & Burlington without authorization.

104.     The Z-Bot RICO violated 8 U.S. Code § 1831(a)(3) on September 14, 2020 after Steven Mnuchen, knowing the "TikTok Global" brand and divestiture strategy had been appropriated from the Plaintiff, determined to possess it and begin using it to undermine the U.S. Government's efforts to enforce the legal ban.

105.     The Z-Bot RICO defendants also violated 13 section 1341 (relating to mail fraud) and section 1343 (relating to wire fraud) on Sep. 14, 2020 by forwarding the email communication the Plaintiff had sent to CFIUS, ByteDance, TikTok and Zhang, and causing it to be forwarded to Mnuchen.

106.     The co-conspirators and members of the Z-Bot RICO knew that sending the CFIUS Sep 14 confidential documents the Plaintiff had submitted was being done outside the rules and requirements CFIUS and the Treasury Department require.

107.     The CNBC concocted origin story for Mnuchin's "TikTok Global" was quickly echoed by all major media outlets, thereby propagating a falsehood across America. Key news sources covering the EO after the Plaintiff's CFIUS submission on September 14, 2020 cited Mnuchin's Sep 14 "TikTok Global" while omitting mention of Plaintiff's transaction. Also leveraging the nationwide reach of Mnuchin's CNBC announcement to deliberately undermine a valid, CFIUS-certified acquisition agreement for TikTOkU.S.

108.     Ultimately, the Defendants' plan to let a co-conspirator seize the Plaintiff's brand

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

before its proper unveiling—as the sole, timely, and fully compliant CFIUS acquisition agreement—was seriously damaging to the Plaintiff.

109.    This conspiracy inflicted severe injury upon the Plaintiff, barring them from acquiring TikTok's U.S. operations despite their submission of two legitimate offers, fully in line with all CFIUS requirement.

110.    ByteDance continued to pursue the non-compliant Oracle partnership, to retain control of its U.S. operations in violation of the E.O.

**September 15, 2020 Plaintiff Notifies Oracle of CFIUS Submission.**

111.    After September 14, 2020, instead of working with ByteDance and CFIUS to close its acquisition, Plaintiff was forced to make an unexpected pivot, and in emergency fashion, attempt to protect its brand identity, create public awareness of the misappropriation Plaintiff had fallen victim to, and create public awareness of its pending, CFIUS-compliant offer.

112.    Plaintiff took action to utilize its CFIUS-certification, fully aware that Oracle, Microsoft, and Walmart lacked this critical certification.

113.    On September 15, Plaintiff put Defendants on notice its covered transaction was protected under CFIUS § 800.213(d)[6] thru contacting Oracle President Safa Catz, stating (**Ex. 5**):

"Hello Ms. Catz,

I was the Founder of Myspace and Chairman/CEO of its publicly traded Parent company, eUniverse, Inc.  -see CNBC Maria Bartiromo video interview for quick color/background at www.mypalisadescapital.com/about.

_____

[6] § 800.2 l3(d) states Any other transaction, transfer, agreement, or arrangement, the structure of which is designed or intended to evade or circumvent the application of section 721

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

Today I am contacting you as the CEO of TikTok Global Network Inc. ('TGN') a company that has timely submitted the information and materials to get CFIUS approval of a "proposed sale" under the President's August 14, 2020 E.O. that "effectuates" (see pages 4-7 of attached which is a portion of the asset acquisition agreement for your evaluation) the ordered "divestment". (see Sep 9, 2020 CFIUS & Sep 14, 2020 submission, pg. 1 & 10 of attached pdf).

It would be great to work with Oracle accomplishing the same goal the President's two related executive orders seek to facilitate. Further, I think that in the long run, Oracle and the United States would be better served partnering with an experienced operator of business to consumer social media assets who is a U.S. Citizen and under a structure that truly divests the assets per the President's E.O.

TGN would certainly be willing to commit to exclusively use Oracle security, cloud and data storage services (as far as outside service providers or partners for those types of products). TGN would also guarantee the same rates/consideration that Oracle has been offered to get the benefit of from ByteDance.

(Also I plan to contribute two additional video and livestreaming technology companies with large audiences I control concurrently with the acquisition of TikTok U.S. assets, so there would be even more exciting growth prospects for all involved parties!)

(1)     Can you confirm Oracle is willing to provide the same services on same pricing its agreed to provide to ByteDance for satisfying CFIUS?

* if TGN is successful getting Sec(d)(ii); **approval? (under CFIUS review since September 14, 2020).

(2)     In addition to strictly the aforementioned service provider role, TGN would welcome Oracle's joining and participating as part of the TGN investor group for any amount up to $10,000,000,000 cash?  (But investment by Oracle would not be required to participate in the security/data safety/storage capacity described in part (1)

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

(3)     Please also consider an additional way to work together which would be for Oracle to inform ByteDance it will only be willing to provide its services for the TikTok U.S. assets (as defined by the Aug 6/14 E.O.s) thru a U.S. company they have been transferred or sold to as part of a "divestment", including thru the structure Oracle has now become aware that TGN is/has offered to ByteDance.

(Unfortunately, the last second effort by ByteDance to offer up a non "divestment" solution involving Oracle as part of its involved parties may or could distract, slow, or prevent ByteDance from fully and fairly considering the aforementioned Sep 14, 2020 Asset Purchase Agreement (which Oracle is now aware of. Based on this new information, please consider that Oracle under the non "divestment" proposal to CFIUS may be unwittingly being used by ByteDance or its affiliates like Sequoia China to contravene Aug 14 E.O. section 2(D which states (D Any transaction or other device entered into or employed for the purpose of, or with the effect of, evading or circumventing this order is prohibited. Or Aug 6 E.O Sec 2(a),(b) Sec. 2. (a) Any transaction by a United States person or within the United States that evades or avoids, has the purpose of evading or avoiding, causes a violation of, or attempts to violate the prohibition set forth in this order is prohibited. (b) Any conspiracy formed to violate any of the prohibitions set forth in this order is prohibited.

"***Sec.2. Actions Ordered (d) ByteDance shall not complete a sale or transfer under section 2(b) to any third party: (i) until Byte Dance notifies CFIUS in writing of the intended recipient or buyer: and (ii) unless 10 business days have passed front the notification in section 2(d)(i) and CFIUS has not issued an objection to ByteDance.

114.    Plaintiff did not receive any response or reply front Oracle to its September 15, 2020 notification letter sent to President Catz

## 2020 Congressional Notifications

115.    ByteDance appeared to be steering towards an unconventional partnership with

25

Oracle, defying the Executive Order and retaining control of TikTok's U.S. operations.

116.    Plaintiff briefed select members of Congress such as Senators Hawley and Rick Scott of Florida on or around September 17, to inform them about its CFIUS submissions and the actions taken by the Defendants to scuttle Plaintiff s acquisition. (Ex. 6).

### The September 20, 2020 Predicate Acts

117.    Bytedance publicly endorsed Mnuchin's "TikTok Global" venture thru a message titled "An update for our TikTok family" (Ex. 7) sent to its over hundred million U.S. users ON September 20, 2020, stating:

> "We're pleased that today we've confirmed a proposal that resolves the Administration's security concerns and settles questions around TikTok's future in the US. Our plan is extensive and consistent with previous CFIUS resolutions, including working with Oracle, who will be our trusted cloud and technology provider responsible for fully securing our users' data. We are committed to protecting our users globally and providing the highest levels of security. Both Oracle and Walmart will take part in a TikTok Global pre-IPO financing round in which they can take up to a 20% cumulative stake in the company. We will also maintain and expand the US as TikTok Global's headquarters while bringing 25,000 jobs across the country."

118.    Zhang, ByteDance, and TikTok, violated 8 U.S. Code § 183 1(a )( 1 ) because they were without authorization appropriating Plaintiff s "TikTok Global" brand and divestiture strategy, it was benefitting China PRC, and they further concealed by fraud, artifice, and deception the fact that "TikTok Global" was the Plaintiff s company and the strategy had been created by the Plaintiff. Instead they used CNBC to make false statements while omitting all mention of Plaintiff s CFIUS certification on Sep 9th 2020 and the Sep 14, 2020 acquisition agreement and CFIUS

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

notice, along with the strategy briefings.

119. In sending the message, Defendants were concealing information from CFIUS regarding the only incorporated and first TikTok Global submissions and agreements ByteDance was part of.

120. The Z-Bot RICO violated 8 U.S. Code § 1831(a)(3) on September 20, 2020 after Zhang, TikTok, ByteDance, knowing "TikTok Global" brand and divestiture strategy to have been appropriated from the Plaintiffs predecessor determined to possess it and begin using it for the benefit of Z-Bot RICO Enterprise to undermine the U.S. Government's efforts to enforce the legal ban, while removing the only viable timely CFIUS approve certified buyer, TG.

121. The Z-Bot RICO violated 8 U.S. Code § 1831(a)(2) because without authorization Zhang, ByteDance, and TikTok, transmitted, delivered, sent, mail, communicated, or conveyed trade secrets including Plaintiffs September 14, 2020 CFIUS notice including the strategic acquisition plan and structure along with the TikTok Global brand and related trade secrets the Plaintiff had developed and shared with the defendants. Zhang, ByteDance, and TikTok then conveyed these confidential materials to Oracle, Covington & Burlington, without Plaintiffs authorization.

122. The Z-Bot RICO defendants ByteDance, Zhang, and TikTok also violated 13 section 1341 (relating to mail fraud) and also section 1343 (relating to wire fraud) on Sep. 20, 2020 thru sending out a false misleading email message to millions of their users in the United States falsely claiming "we've confirmed a proposal that resolves the Administration's security concerns and settles questions around TikTok's future in the US."

123. The defendants had done no such thing nor did they tell their users in the email message which acted as wire fraud and mail fraud, that one purpose of the Sep 20, 2020 letter was

27

to misappropriate Plaintiffs "TikTok Global" brand and to insure the Plaintiffs CFIUS bona fide acquisition stayed concealed and could not be used to actually resolve what the defendants were obligated to do, divest TikTok U.S. from ByteDance.

124.    Nor did the defendants tell the millions of users and the public news reporters covering the divestiture, that the email was meant to mislead the public about the viable options for resolving the legal issues defendants were facing.

125.    Plaintiff efforts became increasingly more difficult as it now needed reporters it was in contact with to understand the complexities and legal implications of what Defendants' potential CFIUS 2(d)(i) violations.

### Plaintiff Achieves CFIUS 2(d)(ii) Approval

126.    On September 23, 2020 CFIUS Sec (2)(d)(ii) approval was granted for the certification information provided to CFIUS on September 9, 2020.

127.    The Plaintiff's position is that CFIUS's acceptance of both filings into its active docket created a binding nexus under 31 C.F.R. § 800.207's "concurrent review" provisions. Under Treasury Department guidance CFIUS transactions become "mutually acknowledged" upon dual submission, regardless of formal partnership agreements.

128.    In addition, by adopting the TikTok Global nomenclature after Plaintiff's certified filing date, Defendants ratified the CFIUS record through their commercial branding decisions.

129.    Further, Contractual acceptance was established through course of dealing, as ByteDance's public adoption of the "TikTok Global" nomenclature constituted tacit endorsement of the joint CFIUS filings.

130.    Increasingly concerned with the lack of progress, Plaintiff submitted an updated Asset Purchase Agreement to ByteDance on September 24th, increasing the deal value to $58

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

billion through (Ex. 8)

- $36 billion in cash;

- $7.5 billion in guaranteed advertising purchases;

- $5 billion in prepaid advertising credits;

- $5.5 billion in employee stock options; and

- $4 billion in assumed liabilities.

131.    During the months of September and December 2020, affiliates sent emails to journalists to inform them about the CFIUS "TikTok "proposed sale" agreement under review by ByteDance & Federal Government.

132.    On Sep. 27th Plaintiff contacted TikTok's Chief Legal Officer directly (**Ex. 9**), stating:

> "Mr. Erich Andersen Chief Legal Officer TikTok Inc.
> Cc: John E. Hall Megan Keegan Globalmedia@bytedance.com
> Attn: Please forward a copy of this letter to ByteDance LTD CEO Mr. Yiming Zhang.
>
> Dear Mr. Andersen,
>
> After TikTok Global Networks' (TGN) $33.3 billion dollar offer to acquire Tiktok U.S. assets from ByteDance LTD (BD), delivered by email at 2:06am est on September 14, 2020 we were surprised to learn that BD later that day put out a statement agreeing to sell 100% of the non-China TikTok operations and assets.
>
> TGN seeks your urgent full consideration and that of TikTok Inc. owner BD to agree to effectuate the August 14, 2020 E.O. by selecting one of the ready to be consummated Asset Purchase Agreements TGN is offering herein for either $33.3 billion dollar (U.S. assets less China) or $58.0 billion dollars

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

(Global assets less China)."

133.   Page 1 of email footnote 1, provided explicit CFIUS notice:

"CFIUS was notified of the potential buyer (as defined in August 14, 2020
E.O.) on September 9, 2020 in writing, previously reviewed the structure of
the offers made today on September l4th, and did not assert any. Sec
2.(d)(ii) objections to either in the 10 business days following each. (see
Exhibit 5.2 of each attached agreement)"

134.   Plaintiff again raised the benefits of its CFIUS approved executable agreement:

"The opportunity here for BD is to use the fortuitous timely executable
agreement to possibly nip in the bud having the Judge rule on the facts, but
certainly take the actions necessary during the day to work with the DOJ
and CFIUS to stop the ban from going in effect at midnite thru gaining their
recognition and acceptance of the fact BD has effective immediately on
entering into one of the TGN Asset Purchase Agreements, done everything
needed with the next deadline being providing a certification of divestment
on November 12, 2020.

1.   Buyer & Agreement structure have already been reviewed by CFIUS
without objections.
2.   Offers are full definitive buyer executed agreements, becoming bona
fide binding agreements subject only to BD counter signing. (Id.)

135.   ByteDance and CEO Yiming Zhan, despite the best efforts of Plaintiff, refused to
accept either of the two genuine buyout offers made. Plaintiff believes that ByteDance's refusal to
cooperate was and continues to be not only harmful to their business interests but also detrimental
to national security concerns raised during the CFIUS review process. As a result, they are
determined to pursue legal action for justice.

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD ♦ SUITE 901 ♦ MIAMI ♦ FLORIDA ♦ 33156 ♦ TEL: 305 670-8282 ♦ FAX: 305 670-8989

**The 2022 No TikTok On Government Devices Act**

136.     On December 14, 2022, President Biden signed into law the "No TikTok on Government Devices Act" which states in Sec 2(a)(1) that TikTok is a "covered application," referring to the social networking service TikTok or any successor application or service developed or provided by ByteDance Limited or an entity owned by ByteDance Limited. Sec 2(b) details a "Prohibition On the use of TikTok."

137.     However, the Defendants have taken controversial actions that seem to violate Federal law, yet again including tapping into their strategic cloud partner Oracle. Moreover, the Defendants have not registered their lobbying activities in a timely manner under FARA regulations, which violates a clear statute in place to protect the American public from corruption in U.S. politics and the influence of foreign government-controlled or affiliated companies or unincorporated associations.

138.     Specifically, ByteDance must provide evidence of how it was able to secure its CEO's attendance at the President's January 20, 2025 inauguration just 72 hours after its emergency appeal to the Supreme Court was denied and its ban upheld, without making any FARA lobbying disclosures.



REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD ♦ SUITE 901 ♦ MIAMI ♦ FLORIDA ♦ 33156 ♦ TEL: 305 670-8282 ♦ FAX: 305 670-8989

(image above photo taken during January 20, 2025 Presidential Inauguration at the White House)

139.    The transaction was still open until the Completion date under 800.206 occurred, at which point the ownership interest transferred to the Plaintiff under the agreement Plaintiff certified was on the table and actionable with ByteDance.

140.    Plaintiff spent significant time contacting multiple senior executives at ByteDance to bring them up to speed on their proposed rescue buyout plan, which had been previously endorsed by the CEO and IR department during the CFIUS application process.

141.    Despite this, ByteDance has remained resolute in their decision, leaving the Plaintiff with no choice but to take legal action.

142.    TG has endured tremendous damages including crushing lost profits and priceless business opportunities that would have flowed naturally from a successful acquisition of TikTok's U.S. operations.

143.    Plaintiff TG is entitled to recover these losses.

144.    Plaintiff's legitimate bids, compliant with all CFIUS requirements, were ignored, leaving them to bear the brunt of antitrust injury.

145.    It is evident that the alleged conduct of ByteDance and Oracle has not only harmed competition more broadly by maintaining ByteDance's control over TikTok in violation of national security directives aimed at increasing competition and protecting U.S. user data, but also deprived consumers of the myriad benefits that come with robust competition in the vibrant world of social media.

146.    Defendants also remain in direct violation of the U.S. Supreme Court's order upholding the Federal ban, revealing a concerning disregard for legal authority.

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

147.    It is clear that Plaintiff now has no choice but to reclaim what was lost: an opportunity to transform online engagement dramatically while ensuring those who perpetrated this subterfuge are held accountable.

### February 28, 2025 Executive Order

148.    On February 28, 2025, the President of the United States issued an executive order suspending defendant ByteDance's long time law firm, Covington & Burlington LLP members Federal security clearances.[7]

i.      "pending a review of their roles and responsibility in the weaponization of the judicial process."

ii.     "This action also initiates a comprehensive review of all Federal contracts with the firm to ensure alignment with the interests of the American people."

iii.    "All contracts with Covington Burlington LLP will undergo a detailed evaluation to ensure agency funding decisions align with American citizens' interests."

iv.     "Individuals who hold government-issued security clearances bear a responsibility to uphold impartiality and the national interest."

v.      "Covington & Burling LLP provided former Special Counsel Jack Smith with $140,000 in free legal services prior to his resignation from the Department of Justice."

### STANDING

149.    Plaintiff has standing to bring this action because it has suffered concrete,

---

[7] "ADDRESSING THE WEAPONIZATION OF GOVERNMENT Today, President Donald J. Trump signed a memorandum to suspend security clearances for Covington & Burling LLP employees" "Security clearances held by Peter Koski and potential other members of Covington & Burling LLP who assisted former Special Counsel Jack Smith will be suspended, https://www.whitehouse.gov/fact-sheets/2025/02/fact-sheet- presiden...government-contracts-for-involvement-in-government-weaponization/

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD ♦ SUITE 901 ♦ MIAMI ♦ FLORIDA ♦ 33156 ♦ TEL: 305 670-8282 ♦ FAX: 305 670-8989

particularized injuries that are fairly traceable to Defendants' conduct and redressable by a favorable decision from this Court. Plaintiffs injuries include: (1) the loss of a valuable business opportunity to acquire TikTok's U.S. operations; (2) the misappropriation of its corporate identity and branding; (3) the suppression of its CFIUS-compliant bid; and (4) the anticompetitive exclusion from the market for social media platforms.

150.    These injuries are directly traceable to Defendants' actions in conspiring to reject Plaintiffs legitimate acquisition offers, misappropriating Plaintiffs corporate identity, and engaging in anticompetitive conduct to maintain ByteDance's control over TikTok's U.S. operations. A favorable decision from this Court would redress Plaintiffs injuries by: (1) requiring ByteDance to divest TikTok's U.S. operations to Plaintiff; (2) awarding damages for Plaintiffs lost business opportunity; and (3) enjoining Defendants from continuing their anticompetitive conduct.

151.    Plaintiffs injuries are not speculative. Plaintiff submitted concrete, executable acquisition agreements that were fully compliant with CFIUS requirements. Plaintiff had the management expertise, and technical capabilities necessary to successfully acquire and operate TikTok's U.S. operations.

152.    Plaintiffs injuries are within the zone of interests protected by the antitrust laws, which are designed to protect competition and prevent the kind of exclusionary conduct engaged in by Defendants. Beijing Telecoms, ByteDance, TikTok the ByteDance CEO Zhang, and Oracle engaged in an unlawful conspiracy in violation of Section 1 of the Sherman Act 15 U.S.C. §1. The victims of this grand scheme was the Plaintiff, whose aspirations to acquire TikTok's U.S. operations were dashed. Their coordinated actions constitute a violation of antitrust laws.

153.    **Market Allocation and Division:** ByteDance maintained control over \ TikTok's U.S. operations through a sham "partnership" structure, effectively allocating the U.S. short video

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

social media market between itself and Oracle while excluding other potential acquirers like Plaintiff.

154. **Group Boycott:** ByteDance conspired to boycott TG's legitimate acquisition offers. Despite Plaintiff TG submitting offers of $33.3 billion and later $58 billion in compliance with all CFIUS requirements, ByteDance refused to respond to or negotiate with TG, instead pursuing the non-compliant Oracle partnership. This boycott was designed to prevent TG from competing for the acquisition of TikTok's U.S. operations.

155. **Bid Rigging:** ByteDance coordinated with Mnuchin to manipulate the CFIUS review process and ensure Oracle's selection as the "trusted technology partner" while suppressing TG's compliant $33.3 billion bid submitted on September 14, 2020.

156. **Concerted Refusal to Deal:** ByteDance and Oracle engaged in a concerted refusal to deal by refusing to respond to or negotiate with TG regarding its CFIUS compliant acquisition agreements for consideration totaling $33.3 billion and later $58 billion as required under § 800.401, instead pursuing the non-compliant Oracle partnership in furtherance of their conspiracy.

157. Further on June 19, 2025 U.S. Congressman Brad Sherman revealed that Bytedance, Beijing Telecom, are paying bribes in violation 18 U.S.C. §201, including thru their controlled affiliate GD Culture Group "are buying "Trump Coins" for $300 million. Trump creates "Trump Coins" at no cost, meaning this is just a $300 million bribe". (**Ex. 15**)

**FIRST CAUSE OF ACTION**
(Section 1 of the Sherman Act, 15 U.S.C. § 1)

158. Plaintiff incorporates by reference paragraphs 1-157 above as if fully set forth herein.

159. ByteDance and Oracle colluded in a ruthless scheme that shackled trade by

35

ruthlessly blocking legitimate acquisition offers for TikTok's U.S. operations. This calculated ploy preserved defendants' grip on the platform—an overt defiance of national security directives—while stubbornly refusing to sell equity interests to American citizens.

160.     Defendant blatantly is now ignoring a Supreme Court appeal ban, while crushing competition in the social media arena, after blatantly sidestepping required CFIUS procedures.

161.     In an even graver act, ByteDance and Oracle plunged into an illegal conspiracy, flagrantly breaching Section 1 of the Sherman Act, 15 U.S.C. § 1. As the law states, "Every contract, combination ... or conspiracy, in restraint of trade or commerce ... is declared to be illegal." Their actions were nothing short of a deliberate assault on free competition.

162.     Specifically, ByteDance and Oracle conspired with cold precision to:

- Skirt proper CFIUS divestment procedures by fashioning a sham "partnership" in place of a bona fide divestment mandated by Executive Order.

- Deliberately muzzle and hide TG's bona fide $33.3 billion and $58 billion acquisition offers, which had faithfully followed all CFIUS protocols.

- Strategically collude with Mnuchin to herald Oracle as the "trusted technology partner," all the while artfully concealing TG's pending, fully compliant CFIUS bid.

- Then brazenly appropriate Plaintiff s IP to mislead viewers on CNBC—falsely declaring that Oracle and ByteDance had sealed a deal to establish 'TikTok Global'—while furtively covering up that the CFIUS certifications submitted by Plaintiff and ByteDance had been the true catalyst for the Treasury Secretary's misguided "TikTok Global" hoax.

- Impose artificial obstacles designed to suffocate legitimate acquisition offers, ensuring ByteDance retained its oppressive control; and

- Undermine competition in the social media market by allowing ByteDance to hold onto TikTok's U.S. operations rather than divesting to an

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD ♦ SUITE 901 ♦ MIAMI ♦ FLORIDA ♦ 33156 ♦ TEL: 305 670-8282 ♦ FAX: 305 670-8989

independent and competitive rival.

163.   These improper cloud "security" agreement and similar arrangements designed to bypass CFIUS wreaked havoc, inflicting serious antitrust injuries upon TG and poisoning market competition.

164.   This agreement was not merely a document signed in secrecy—it was a meticulously engineered maneuver, shrouded in subterfuge, designed to trap TikTok's future by perpetuating ByteDance's monopoly over its U.S. operations, all under a facade of legal compliance.

165.   This conspiracy struck Plaintiff with devastating force, obstructing their ability to complete the CFIUS certification divestment schedule and acquire TikTok's U.S. operations— even as they presented legitimate, compliant offers.

166.   Mnuchin's revelation of an impostor unincorporated "TikTok Global" was a calculated act of deception, suppressing TG's CFIUS-compliant bid despite it being the only transaction with an executable final agreement, while championing Oracle's non-compliant deal.

167.   Plaintiff through one or more intermediaries strategically informed top media news outlets directly through their top media journalists of the $33.3 then $58 billion dollar CFIUS acquisition agreements between September 14" and months end including Ana Sorenson and Paul Mozur at the New York Times, Reporters Zoe and Casey at the Verge , Nick Wadhams at Bloomberg, Clare Duffey at CNN , D. Whately at Business Insider, Bobby Allyn at NPR, Brian Fung at CNN, and Arbel Tarbel at Thomson Reuters, among others (**Ex. 10**).[8]

---

[8] There was immediate and significant interest from almost all of the reporters contacted.

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD ♦ SUITE 901 ♦ MIAMI ♦ FLORIDA ♦ 33156 ♦ TEL: 305 670-8282 ♦ FAX: 305 670-8989

168.   For example, NY Times reporter Ana Sorenson initially responded with enthusiasm but became confused when she discovered conflicting information about TikTok Global's $33.3 billion deal pending before CFIUS. The confusion stemmed from ByteDance directing Mnuchin's announcement of TikTok Global while suppressing Plaintiff's September 14, 2020 CFIUS acquisition agreement. Consequently, reporters moved on to different stories as they couldn't verify the details. (**Ex. 11**).

169.   The confusion caused by ByteDance's actions led reporters to abandon the story because: a) They could not verify the Plaintiff's alleged September 14, 2020, 5:04 AM $33.3 billion acquisition agreement under review by CFIUS; b) ByteDance was directing attention to Mnuchin's announcement of TikTok Global; and c) The original Plaintiffs agreement was being suppressed.

170.   Reporters could confirm the story of TikTok Global that began later that same day when the Treasury Secretary announced a new deal involving ByteDance and adding 25,000 jobs to the U.S., which included public announcements by Oracle Corp, Walmart, and Microsoft.

171.   Even after Plaintiff increased its offer with a new acquisition agreement submitted to CFIUS and ByteDance on September 24, 2024, ByteDance's September 14th actions continued to negatively impact press coverage for the Plaintiff.

172.   For instance, Plaintiff attempted again at the end of September with a letter shared with The Information "Subject: ByteDance leverages new 558 billion buyout offer to win injunction", but it too met with the same demise. (**Ex. 11**).

173.   Plaintiff suffered damages culminating in TikTok Global's March 2022 Delaware charter became inoperative and forfeited after the Sep 14th CNBC misappropriation including increasing accruing harms from diminished brand recognition when attempting to expand its

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

investor syndicate.

174. For instance, the Plaintiff reached out to a potential investor on September 9, 2020, publicly traded SPAC Pershing Square Tontine Holdings, Ltd, with whom they had no prior relationship.

175. The Pershing SPAC failed to respond since they certainly encountered Mnuchin's Sep 14 CNBC "TikTok Global" during their evaluation of Plaintiffs proposal, rendering Plaintiffs introduction letter perplexing and any credibility the Plaintiff had hoped to establish with the Pershing SPAC irreparably damaged. (Ex. 12).

176. Among their many anticompetitive tactics was the creation of a cleverly disguised subcontracting agreement under the guise of an Oracle "partnership" that allowed ByteDance to unrelentingly maintain control of TikTok's U.S. operations, while feigning adherence to the Executive Order.

177. Alternatively or additionally the conspirators also employed an insidious tactic known as Complementary Bidding.

178. Oracle's "trusted technology partner" proposal was merely a sham—a false divestment designed to project an illusion of compliance while permitting ByteDance to unremittingly hold the reins.

179. This vicious anticompetitive conduct has directly sapped competition in the social media market by:

- Crushing legitimate acquisition offers for TikTok's U.S. operations;
- Solidifying ByteDance's tyrannical control of the platform in direct defiance of national security mandates;
- Suppressing healthy competition in the social media market;
- Evading necessary CFIUS procedures with reckless abandon;

39

- Engineering artificial barriers to entry; and
- Depriving consumers of the fruits of genuine competitive innovation.

180.    Agreements between competitors to allocate markets, refuse to deal, or rig bids are per se violations of Section 1 of the Sherman Act.

181.    As a direct result of ByteDance's unscrupulous interference, TG has suffered catastrophic damages.

182.    These include crippling lost profits and the destruction of valuable business opportunities that would have naturally ensued from a successful acquisition of TikTok's U.S. operations had the process been allowed to proceed unobstructed, which TG is unequivocally entitled to recover. which TG is unequivocally entitled to recover.

183.    Now, with the Supreme Court's decision in TikTok Inc. v. Garland, 604 U.S. (2025), upholding the ban on TikTok unless its U.S. operations are severed from Chinese control, Plaintiffs acquisition offers—which were specifically designed to accomplish this severance—stand as the only viable solution to preserve TikTok's operations in the United States while complying with U.S. law.

184.    ByteDance's continued refusal to divest TikTok's U.S. operations to Plaintiff, despite the Supreme Court's ruling, constitutes an ongoing violation of the Sherman Act and causes continuing harm to competition and to Plaintiff.

## SECOND CAUSE OF ACTION
(Tortious Interference with Advantageous Business Relationship)

185.    Plaintiff incorporates by reference paragraphs l-157 and 159-184 above as if fully set forth herein.

186.    TG had a reasonable expectation of economic advantage from its bid to acquire

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

TikTok's U.S. operations, having followed all required CFIUS procedures and submitted legitimate, fully-funded offers.

187.    TG's offers represented true divestment solutions that would have fully addressed the national security concerns that prompted the Executive Order, providing a clear path forward for TikTok's U.S. operations to continue under new ownership.

188.    TG also possessed the deep expertise necessary to successfully acquire and operate TikTok's U.S. operations: i. Its team included experienced executives with a proven track record in the tech industry. ii. On September 9, 2020, TG took the formal step of submitting notice to CFIUS under Section 2(d)(i), signifying its intent to bid for TikTok U.S. iii. This was followed by the submission of formal acquisition offers fully executable to ByteDance on September 14, 2020, and September 24, 2020, illustrating a clear and deliberate commitment to the acquisition process. (**Ex. 3** and **Ex. 9**).

A.   ByteDance and TikTok interfered with Plaintiff TikTok Global's CFIUS certification agreements and legal notices including declarations which carry obligations for all parties going forward upon CFIUS receiving such documents on September 9, 2020, and the additional acquisition agreement CFIUS approved which would then attach ByteDance and TikTok since they were already attached with CFIUS.

B.   Steve Mnuchen as a member of Z-BOT interfered with Plaintiff's business agreements being reviewed by Beijing Telecom and ByteDance and TikTok.

C.   If Byte Dance or TikTok is found to have violated CFIUS Regulation for avoiding or conspiring to avoid a transaction Like the one Plaintiff's Sep 14, 2020 CFIUS notice provided for.

D.   Z-BOT RICO Enterprise Covington & Burlington is interfering with Plaintiff's Rights under CFIUS and other due process rights because Covington interfered with the September 27, 2020 $58 billion dollar offer which was sent to Covington

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD ♦ SUITE 901 ♦ MIAMI ♦ FLORIDA ♦ 33156 ♦ TEL: 305 670-8282 ♦ FAX: 305 670-8989

or that Covington became aware of and concealed instead of forwarding to its client in China, Beijing Telecom.

E.   Z-BOT RICO thru making a vexatious litigant claim in Court against the CEO of the Plaintiff who is a non-party while omitting the exculpatory granted Federal Jan 2024 Request Judicial Notice on 9" circuit vexatious litigant jurisdiction that voids the very legal orders the defendants will be citing.  Docket #794 in USA v. Google if fully incorporated by reference.

189.   ByteDance, acutely aware of TG's anticipation of economic gain, engaged in deliberate acts of interference. This included blatantly ignoring TG's properly submitted bids, actively pursuing a non-compliant transaction with Oracle, and strategically concealing TG's bids from public disclosure.

190.   Furthermore, ByteDance coordinated with Secretary Mnuchin to bypass the established CFIUS procedures, undermining the integrity of the process

191.   ByteDance's interference was both intentional and improper, driven by a motive to retain control over TikTok's U.S. operations in blatant violation of the Executive Order.

192.   This self-serving agenda was in stark contrast to the public interest, which prioritized national security and the principles of fair competition.

193.   As a direct consequence of ByteDance's improper interference, TG has suffered substantial damages.

194.   These include significant lost profits and valuable business opportunities that would have naturally flowed from its successful acquisition of TikTok's U.S. operations, had the process proceeded without obstruction.

195.   TG is entitled to recover the full extent of these losses.

196.   The Supreme Court's decision in TikTok Inc. v. Garland, 604 U.S.  (2025), further

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

confirms the legitimacy of TG's expectation of economic advantage, as the Court has now made clear that TikTok's U.S. operations must be severed from Chinese control— precisely what TG's acquisition offers were designed to accomplish.

197.    ByteDance's continued refusal to divest TikTok's U.S. operations to Plaintiff, despite the Supreme Court's ruling, constitutes ongoing tortious interference and causes continuing harm to Plaintiff.

## THIRD CAUSE OF ACTION
### (Unjust Enrichment)

198.    Plaintiff incorporates by reference paragraphs l-157 and 159-184 and 186-197 as though fully set forth.

199.    ByteDance has unjustly reaped financial advantages by maintaining control over TikTok's U.S. operations through a strategic partnership with Oracle, all while sidestepping the genuine divestment mandated by the Executive Order.

200.    This maneuver allowed ByteDance to continue its grip on the lucrative TikTok market in the United States.

201.    ByteDance secured this benefit by willfully dismissing TG's legitimate acquisition proposals and deftly circumventing the procedural requirements of the CFIUS. Defendants Beijing Telecom and ByteDance happily accepted and made use of the proprietary strategic briefs the Plaintiff provided in August and September 2020. For example, this page front one of the briefings Plaintiff provided at no cost, helped provide new options and strategies that benefitted the defendant.

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989



(image above is page 5 of confidential work produce for client Beijing Telecom, August 2020 Strategy Briefing Plaintiff Distributed to Over 20 ByteDance Senior Executives and Lawyers as part of Operation "White Knight Last Minute Rescue To Help USA By An American Citizen")

202.    Despite having ample opportunities, Defendants ByteDance and its CEO Mr. Zhang both copied on the September 9 and 14th, 2020 CFIUS submissions never once demanded a termination of the definitive agreement, CFIUS certification, or CFIUS approvals. ByteDance's head of Public Relations also received or accessed the same critical data.

203.    Even later after ByteDance's U.S. lawyers got their hands on copies of the CFIUS certification from the Plaintiff, neither did ByteDance's attorneys ever dare to request to terminate or cancel the CFIUS application and certification its client was a party to. And why would they?

204.    Plaintiffs CFIUS certification likely represented the sole legally certified, CFIUS-approved bidder for ByteDance and TikTok in the high-stakes arena of 2020. Plaintiffs CFIUS application was ByteDance's fall back option or alternatively was a bargaining chip used by

44

ByteDance to optimize its negotiations with Oracle.

205.    The actions of ByteDance were executed with deliberate bad faith and an ulterior motive to persist in exercising control over TikTok's U.S. operations, thereby flouting the directives of the Executive Order.

206.    By holding onto TikTok's U.S. operations, ByteDance has continued to draw substantial profits, tapping into the vast revenue stream generated by American users.

207.    This persistent profit accrues despite the unfulfilled divestment stipulation outlined in the Executive Order.

208.    Allowing ByteDance to retain the benefits gained through such improper conduct would be inequitable.

209.    ByteDance's retention of these advantages comes at the expense of TG, which unjustly deprived of the opportunity to acquire TikTok's U.S. operations, despite having submitted legitimate offers that complied with all CFIUS requirements.

210.    As a consequence of this unjust enrichment by ByteDance, TG is entitled to restitution in an amount to be determined at trial, but no less than the substantial value of TG's $58 billion offer for TikTok's U.S. operations.

211.    The Supreme Court's decision in TikTok Inc. v. Garland, 604 U.S.  (2025), further confirms the inequity of ByteDance's continued retention of benefits from TikTok's U.S. operations, as the Court has now made clear that these operations must be severed from Chinese control—precisely what TG's acquisition offers were designed to accomplish.

212.    Defendants' continued refusal to divest TikTok's U.S. operations to Plaintiff, despite the Supreme Court's ruling, constitutes ongoing unjust enrichment and causes continuing harm to Plaintiff 210. The Supreme Court's decision in TikTok the. v. Garland, 604 U.S.(2025),

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

further confirms the deceptive nature of ByteDance's conduct, as the Court has now made clear that TikTok's U.S. operations must be severed from Chinese control— precisely what TG's acquisition offers were designed to accomplish, and what ByteDance falsely portrayed the Oracle partnership as achieving.

213.    ByteDance's continued refusal to divest TikTok's U.S. operations to Plaintiff, despite the Supreme Court's ruling, constitutes ongoing deceptive and unfair trade practices and causes continuing harm to Plaintiff.

**FOURTH CAUSE OF ACTION**
**(Florida Deceptive and Unfair Trade Practices Act)**

214.    Plaintiff incorporates by reference paragraphs l-157 and 159-184 and 186-197 and 199-213 as though fully set forth.

215.    ByteDance falsely portrayed the Oracle partnership as a genuine divestment of TikTok's U.S. operations.

216.    In reality, it was a cunning scheme designed to retain control while giving the illusion of compliance with the Executive Order.

217.    Mnuchin's unexpected announcement was a brand mugging on a public stage, leaving a bitter taste in the Plaintiffs mouths.

218.    Plaintiffs fully compliant CFIUS bid had been deliberately concealed and suppressed in favor of promoting Oracle's non-compliant proposal.

219.    The Oracle proposal did not present a true divestment as required by the Executive Order, instead suggesting a partnership deal that would enable ByteDance to retain control.

220.    This deliberate misrepresentation was crafted to mislead CFIUS, the general public, and potential bona fide buyers such as TG.

46

221.   ByteDance was fully aware the Oracle partnership did not fulfill the criteria for a genuine divestment as mandated by the Executive Order.

222.   ByteDance false representations were of significant importance because they pertained to the core nature of the transaction and its compliance with the Executive Order's stipulations.

223.   As a direct and proximate result of ByteDance's deceptive business practices, TG has suffered substantial damages, including: (a) Loss of profits (b) Loss of business opportunities (c) Reputational damage (d) Legal and administrative costs (e) Loss of potential market share.

224.   Plaintiff, along with its predecessors TikTok Global Network Inc. and TikTok Global Inc., has been grievously harmed by ByteDance's treacherous conduct.

225.   Plaintiff will be further damaged without intervention by this honorable Court and it's just legal relief.

226.   The Supreme Court's decision in *TikTok Inc. v. Garland*, 604 U.S. ____ (2025), further confirms the deceptive nature of ByteDance's conduct, as the Court has now made clear that TikTok's U.S. operations must be severed from Chinese control—precisely what TG's acquisition offers were designed to accomplish, and what ByteDance falsely portrayed the Oracle partnership as achieving.

227.   ByteDance's continued refusal to divest TikTok's U.S. operations to Plaintiff, despite the Supreme Court's ruling, constitutes ongoing deceptive and unfair trade practices and causes continuing harm to Plaintiff.

## FIFTH CAUSE OF ACTION
### (Declaratory Relief)

228.   Plaintiff incorporates by reference paragraphs l-157 and 159-184 and 186-197 and

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

199-213 and 215-227 as though fully set forth.

229.    An actual controversy exists between Plaintiff and Defendants regarding the rights to acquire and operate TikTok's U.S. operations in light of the Supreme Court's decision in TikTok Inc. v. Garland, 604 U.S.  (2025).

230.    The Supreme Court has upheld the constitutionality of the Protecting Americans from Foreign Adversary Controlled Applications Act ("the Act"), which prohibits U.S. companies from providing services to TikTok unless U.S. operation of the platform is severed from Chinese control.

231.    Plaintiffs acquisition offers were specifically designed to accomplish this severance of control, in full compliance with the requirements of CFIUS and the August 14, 2020 Executive Order.

232.    Plaintiffs acquisition offers remain the only viable solution to preserve TikTok's operations in the United States while complying with U.S. law as interpreted by the Supreme Court

233.    ByteDance's continued refusal to divest TikTok's U.S. operations to Plaintiff, despite the Supreme Court's ruling, creates an actual controversy regarding the rights and obligations of the parties.

234.    Plaintiff seeks a declaratory judgment that: (a) Plaintiffs acquisition offers comply with the requirements of the Act and the August 14, 2020 Executive Order; (b) ByteDance is obligated to divest TikTok's U.S. operations in accordance with the Act and the August 14, N2020 Executive Order; (c) Plaintiff, as the only entity that submitted timely, compliant acquisition offers, has the right to acquire TikTok's U.S. operations; and (d) In the alternative, if ByteDance abandons TikTok's U.S. operations rather than divesting them, Plaintiff has the right to succeed to those operations as the only entity that submitted timely, compliant acquisition offers.

48

235.    A declaratory judgment is necessary and appropriate at this time to clarify the rights and obligations of the parties in light of the Supreme Court's decision and to prevent further harm to Plaintiff and to the public interest in maintaining competition in the social media market.

## SIXTH CAUSE OF ACTION
### (Violation of 501.204 Unlawful acts and practices)

236.    Plaintiff incorporates by reference paragraphs l-157 and 159-184 and 186-197 and 199-213 and 215-227 and 229-235 as though fully set forth.

237.    Under 501.204(1), any unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts in trade or commerce are strictly prohibited. The Defendants plunged the Plaintiff into chaos, forcing them to hemorrhage money defending their brand and legal rights after the catastrophic September 14, 2020, false CNBC broadcast. This broadcast recklessly misappropriated "TikTok Global," a blunder that obliterated billions in potential economic opportunities. The market was thrown into turmoil by the Defendants' actions, as they spun a web of confusion starting in September 2020, relentlessly perpetuating and reaffirming their deceit for months on end.

238.    The Defendants had the power to instantly rectify their colossal error by admitting they used the wrong name and bungled the paperwork at CFIUS. Such an admission would have restored the Plaintiff's rightful CFIUS certification and upheld the Plaintiff's standing with an approved asset agreement that had been thoroughly vetted by CFIUS within the minimal holding periods.

239.    The Z-BOT RICO Enterprise maliciously sabotaged the Plaintiff's CFIUS Certification and agreement rights. They interfered with the Plaintiff's ByteDance, Beijing Telecom, and TikTok acquisition agreements, persisting in their ruthless interference until they

49

effectively terminated the deceitful "TikTok Global" arrangement. Even with the newly announced "TikTok America" in 2025, the Defendants shamelessly continued to mimic the Plaintiff's original 2020 strategy and vision, merely under a fresh guise.

240.    The creation of the fabricated "TikTok Global" was a brutal and unfair competition tactic.

241.    Such malicious actions obliterated the Plaintiff's brand usage in the aftermath of the September 14, 2020 debacle. By March 1, 2022, TikTok Global Inc was obliterated, as evidenced by the Delaware Secretary's records. Yet, up until that grim date, the Plaintiff valiantly struggled to finalize the deal with ByteDance, Beijing Telecom, and Oracle.

242.    The Plaintiff extended an olive branch to Oracle, inviting them into a deal and soliciting investment through a letter dated September 15, 2024, addressed to President Safra Catz.

243.    However, this promising Oracle deal was brutally thwarted by ByteDance and other conspirators within the Z-BOT RICO Enterprise. They mercilessly interfered with the Plaintiff's hopes of sealing a cloud services white label deal, crushing their expectations with ruthless precision.[9]

### SEVENTH CAUSE OF ACTION
### (VIOLATION OF RICO, 18 U.S.C. § 1962(c))

244.    Plaintiff incorporates by reference paragraphs l-157 and 159-184 and 186-197 and

---

[9]  (b) Organizations. —

Any organization that commits any offense described in subsection (a) shall be fined not more than the greater of 510,000,000 or 3 times the value of the stolen trade secret to the organization, including expenses for research and design and other costs of reproducing the trade secret that the organization has thereby avoided.

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

199-213 and 215-227 and 229-235 and 237-243 as though fully set forth.

245.    The Z-BOT RICO Enterprise constitutes an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

246.    Defendants conducted and participated in the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c) including:

- Multiple instances of mail and wire fraud (18 U.S.C. §§ 1341, 1343)

- Multiple instances of (18 U.S.C. 1831) economic espionage

- Multiple instances of bribery (18 U.S.C. § 201)

247.    These predicate acts were related, continuous, and caused direct injury to Plaintiff and predecessor TikTok Global Inc. (TG).

248.    This pattern of racketeering activity caused damages to Plaintiff exceeding $58 billion dollars through:

- Artificially depressed valuations

- Lost business opportunities

- Increased costs from anticompetitive conduct

249.    This conduct directly caused damages to Plaintiff and public every day it continues as a banned Foreign company attacking U.S. citizens' property must not be allowed to continue or it will have an adverse impact on the United States technology eco-system which is one of the most important in the world.

**EIGHTH CAUSE OF ACTION**
**(CONSPIRACY TO VIOLATE RICO, 18 U.S.C. § 1962(d))**

250.    Plaintiff incorporates by reference paragraphs l-157 and 159-184 and 186-197 and 199-213 and 215-227 and 229-235 and 237-243 and 245-249 as though fully set out.

51

251.    Defendants conspired to conduct the affairs of the Z-BOT RICO Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

252.    Each Defendant agreed to participate in the conspiracy and committed overt acts in furtherance thereof.

253.    With Beijing Telecom, Oracle, ByteDance, TikTok, their law firm Covington Law who amazingly ByteDance engaged to represent it after the February President's Executive Order.

254.    Covington is helping guide and direct the entire Z-BOT RICO enterprise to rid the defendants of significant legal claims for billions of dollars in damages front 2020, violations of U.S. Code § 201 (b)( 1), Multiple instances of witness tampering ( 18 U.S.C. § 15 12), Multiple instances of retaliation against witnesses victims ( 18 U.S.C. § 1513), Multiple instances of money laundering ( 18 U.S.C. § § 1956, 1957)

255.    This is a continuing conspiracy because of the fact that Plaintiff should or its predecessor should have been given the first or equal opportunity to purchase Defendant TikTok if according to news reports, the defendant needs to be sold in a CFIUS approved transaction.

## NINTH CAUSE OF ACTION
### (VIOLATION SECTIONS 895.01-895.06 "FLORIDA RICO ACT")

256.    Plaintiff incorporates by reference paragraphs l-157 and 159-184 and 186-197 and 199-213 and 215-227 and 229-235 and 237-243 and 245-249 and 251-255 as though fully set out.

257.    Defendants Beijing Telecom, ByteDance LTD, its CEO Zhang, TikTok, Inc., Oracle Corp, Covington & Burlington, GD Culture Group, Steven Mnuchen, and Sayonara LLC are implicated under Section 895.02(5) as a formidable and coordinated entity known as "The Z-Bot RICO Enterprise."

258.    This Z-Bot RICO Enterprise is, under Section 895.02(7), engaged in a systematic

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

and aggressive pattern of racketeering activity.

259.    The Z-Bot RICO Enterprise violated Section 817.155 and Section 817.44 by making deceitful statements and omissions. They distorted the truth about Plaintiff predecessor's CFIUS submissions and certifications, perpetrating this fraud through the September 20, 2020 ByteDance public announcement, which misidentified "TikTok Global" and omitted the Plaintiff's CFIUS submitted agreement and offer.

260.    Furthermore, the Z-Bot RICO Enterprise compounded their violations of the aforementioned sections and Section 817.44 with the September 14, 2020 CNBC statements. These false claims about "TikTok Global" breached Section 817.569 by crafting a misleading public record through national television broadcasts and subsequent newspaper articles that perpetuated the falsehood stemming from the September 14, 2020 CNBC broadcast.

261.    The Z-Bot RICO Enterprise violated Section 817.02 through the false personation of TikTok Global and its CEO, evident in the deceptions broadcast on September 14, 2020, by CNBC and the misleading public statements issued by ByteDance on September 20, 2020, disseminated widely on their websites and to the press.

262.    They further violated Section 817.034, known as the Florida Communications Fraud Act, by orchestrating a calculated scheme to defraud the Plaintiff of its critical CFIUS certifications and the rights secured through such efforts.

263.    The Defendants unlawfully seized the Plaintiff's intangible personal property, including its CFIUS certification "rights, privileges, interests, and claims," as per 817.034(3)(c).

264.    Pursuant to 895.05(1)(a), this Court has the authority to compel the defendants to divest themselves of any stakes in the illegal enterprise, including the valuable TikTok U.S. assets.

265.    Under 895.05(1)(b), this Court is obligated to impose restrictions and prohibitions

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

on the defendants, preventing them from engaging in the same malevolent endeavors as the enterprise in which they have participated, in direct violation of s. 895.03.

266.    As mandated by 895.05(1)(c), this Court should decree the dissolution of the Z-Bot RICO Enterprise.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court: ( 1) Enter judgment in their favor and against the Z-BOT RICO Enterprise, TikTok Inc., ByteDance, and Yiming Zhang; (2) **Compensatory Damages:** Award Plaintiff compensatory damages in an amount not less than $58 billion dollars, for the financial losses and damages suffered as a result of Defendants' unlawful conduct; (3) **Punitive Damages**: Award Plaintiff punitive damages to punish Defendants for their willful, malicious, and fraudulent actions, and to deter similar conduct in the future; (4) **Treble damages:** Award Plaintiff treble damages under RICO and pursuant to the Sherman Antitrust Act for the antitrust violations committed by Defendants; (5) **Injunctive Relief:** Grant preliminary and permanent injunctive relief requiring Defendants to divest TikTok's U.S. operations to Plaintiff, in compliance with the August 14, 2020 Executive Order, and to cease any further anticompetitive practices; (6) **Attorney Fees and Costs:** Award Plaintiff reasonable attorneys' fees and costs incurred in bringing this action, as permitted by law; ; (7) **Award Plaintiff pre-judgment and post-judgment interest** to the maximum extent allowed by law; (8) **Issue a declaratory judgment** clarifying the rights and obligations of the parties in light of the Supreme Court's decision in *TikTok the. v. Garland*, 604 U.S. ____ (2025), and alternatively, Plaintiff should become the successor to any U.S. assets the banned companies abandon. Grant such other relief as the Court deems just and proper.

REINER & REINER, P.A.
9100 SOUTH DADELAND BLVD ♦ SUITE 901 ♦ MIAMI ♦ FLORIDA ♦ 33156 ♦ TEL: 305 670-8282 ♦ FAX: 305 670-8989

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: July 15, 2025                    Respectfully Submitted,

REINER & REINER, P.A.
Counsel for Plaintiff
9100 South Dadeland Blvd., Suite 901
Miami, Florida  33156-7815
Tel: ( 305) 670-8282;. Fax: (305) 670-8989
dpr@reinerslaw.com;. eservice@reinerslaw.com

By:_____
**DAVID P. REINER, II, ESQ**.; FBN 416400