**EXHIBIT 1**

# International Economic Law and Policy Blog

Home
About
RSS Feed
Subscribe Via Email
WorldTradeLaw.net

## Guest Post: TikTok, IEEPA, and CFIUS

*This is a guest from Wentong Zheng, a law professor at the University of Florida*

On August 6, 2020, President Trump issued an executive order entitled Addressing the Threat Posed by TikTok, and Taking Additional Steps to Address the National Emergency With Respect to the Information and Communications Technology and Services Supply Chain ("Aug. 6 EO"). Citing statutory authority under the International Emergency Economic Powers Act ("IEEPA"), the Aug. 6 EO prohibits any transactions by persons subject to U.S. jurisdiction with ByteDance Ltd., the parent company of the popular video-sharing mobile application TikTok, beginning 45 days after the date of the order, and authorizes the Secretary of Commerce to identify the transactions subject to the prohibition 45 days after the date of the order. The Aug. 6 EO justifies its action by referencing TikTok's alleged threats to U.S. national security through data collection, content censorship, and misinformation campaigns.

About a week later, on August 14, 2020, President Trump issued another executive order entitled Order Regarding the Acquisition of Musical.ly by ByteDance Ltd. ("Aug. 14 EO"). Pursuant to the power granted to the President and the Committee on Foreign Investment in the United States ("CFIUS") under the Exon-Florio Amendment, the Aug. 14 EO orders ByteDance to divest, within 90 days, from the assets and data that TikTok has gathered in the United States. ByteDance falls within the purview of CFIUS because of its 2017 acquisition of lip-sync app Musical.ly, which ByteDance later merged into TikTok to create a single integrated social media application. ByteDance did not submit an application for CIFUS review at the time of the acquisition, but CFIUS retroactively reviewed the acquisition and unanimously recommended divestiture to the President.

Amid reports of negotiations for a potential sale of TikTok, TikTok and ByteDance filed a lawsuit on August 24 before the U.S. District Court for the Central District of California. The lawsuit challenges the Aug. 6 EO as unconstitutional and ultra vires, and seeks a court injunction against the order. Among other claims, the plaintiffs contend that the Aug. 6 EO violates TikTok's right to due process under the Fifth Amendment of the U.S. Constitution as well as TikTok's First Amendment rights in its code. The plaintiffs also argue that the Aug. 6 EO is ultra vires because it does not meet several statutory standards set forth in the IEEPA.

Leaving aside the merits of the plaintiffs' claims, it appears that the Aug. 24 lawsuit does not address the real threat to ByteDance's continued ownership and operation of TikTok. The Aug. 24 lawsuit challenges the Aug. 6 EO, not the Aug. 14 EO. There have been some confusions on the part of media about the relationship between the two EOs. Some news outlets reported that the later EO "extended" the deadline set in the earlier one. Indeed, these two EOs are separate executive actions that stand on independent legal grounds. The Aug. 6 EO is pursuant to the President's emergency power under the IEEPA, whereas the Aug. 14 EO stems from the President's power to prohibit or restrict foreign investment under the Exon-Florio Amendment. It is the Aug. 14 EO that issues a binding order with a deadline. The Aug. 6 EO, as the plaintiffs themselves acknowledge in their Aug. 24 lawsuit, is not clear as to its exact breadth until the Secretary of Commerce defines the covered transactions after September 20 (pages 26-27 of the complaint). In the event that the Secretary of Commerce chooses to subject no transactions or a very narrow set of transactions to the prohibition, much of the plaintiffs' case will be rendered moot.

That said, from the plaintiffs' point of view, the Aug. 24 lawsuit certainly serves the important goal of eliminating the *risk* of a ban under the Aug. 6 EO. But even if the Aug. 24 lawsuit succeeds on that front, it cannot prevent the divestiture ordered by the Aug. 14 EO. Assuming that the plaintiffs could obtain a preliminary injunction in time to prevent the Aug. 6 EO from going into effect, they are still staring at a 90-day deadline for divestiture, unless they could also successfully challenge the Aug. 14 EO in court.

However, a court action challenging the Aug. 14 EO is much more difficult to win. The Exon-Florio Amendment, the law on which the Aug. 14 EO is based, states that the President's actions and findings in prohibiting foreign investment that threatens to impair national security of the United States are not subject to judicial review. In a 2014 case, *Ralls v. CFIUS*, the U.S. Court of Appeals for the D.C. Circuit upheld the President's authority to take non-reviewable actions to suspend or prohibit foreign investment. The D.C. Circuit, however, also held that plaintiffs were allowed to assert procedural due process claims against CFIUS. In *Ralls*, the D.C. Circuit found in favor of the Chinese-owned plaintiff because CFIUS failed to provide the plaintiff an opportunity to rebut even unclassified, non-privileged information. But here, TikTok and ByteDance appear to have undermined their potential procedural due process claims in a future court action challenging the Aug. 14 EO. In their Aug. 24 lawsuit, TikTok and ByteDance state that "through the course of the CFIUS review, ByteDance provided voluminous documentation and information in response to CFIUS's questions," (p. 14 of the complaint). This admission potentially undercuts any arguments that TikTok and ByteDance were not afforded an opportunity to be heard during the CFIUS process.

It will be very interesting to see how this legal drama will unfold. I will provide more updates when we have them.

Posted by Simon Lester on August 27, 2020 at 06:53 AM | Permalink
Tweet This!

## Comments

El roam said...
Important issue indeed. Just worth to note, another constitutional right that has or shall be violated mentioned in the complaint, and it is the "Taking clause". I quote:

" The president has repeatedly made demands for a"very substantial" payment to the US Treasury Department as a condition of approving a divestiture of TikTok Inc.'s U.S assets and had made clear that, in the absence of such a divestiture and payment, he would ban TikTok."

Also worth to note, the violation of the non delegation principle. I quote:

"The ambiguity and breath of President Trump's executive order highlights that the President's ability to invoke a national emergency under IEEPA is so open-ended that Congress has not supplied an "intelligible principle" to guide Executive Branch decision - making authority."

End of quotation:

In sum, it looks that the federal government, shall supply the court, with many evidences for potential threats. Yet, not really concretely concerning TikTok it seems. We shall wait and see, how deep is the sea indeed.

Thanks

Reply August 27, 2020 at 09:03 AM
Steve Charnovitz said...
Thanks for the informative post. I agree with El roam's additions. CFIUS is the most notorious of the US programs that defy